[Crim. No. 5758.   Second Dist., Div. One.   May 13, 1957.]

THE PEOPLE, Respondent, v. CHARLES H. CAHAN, Appellant.

Ray M. Davidow for Appellant.

Edmund G. Brown, Attorney General, and Morris Schachter, Deputy Attorney General, for Respondent.

DORAN, J.— ■ ] As recited in appellant's brief, "Mrs. Springer, of 3861 Brunswick Avenue, telephoned the police on November 3, 1955, to come to her home. The defendant Marsh was her son; she had raised the defendant Cahan. Neither lived with her at that address. She resided there with her husband. On arriving, the police were admitted into her home. Neither of the defendants was present at that time. There were quite a few officers. After some conversation two of the officers stayed in the bedroom at the said address, and Mrs. Springer left. Defendant Marsh arrived and was observed to be engaged in bookmaking by the two police officers from their vantage point in the bedroom. He was arrested and taken from the house. Subsequently, Mr. Cahan arrived and was observed by the two officers from their vantage point in the bedroom to be engaged in bookmaking, and he was arrested.

"Both arrests were made without a warrant for either defendant.

"ISSUE

"The sole issue is whether or not consent to the officers was voluntarily given to enter, to remain, to search, and to hide; or whether or not there was a submission on the part of Mrs. Springer to an express or implied assertion of authority by the police officers.

"DEFENDANT'S CONTENTION

"It is defendant's contention that Mrs. Springer submitted to the implied assertion of authority of the police officers and did not voluntarily consent to the police officers hiding in her house or searching the premises." It is further argued by appellant, "It is defendant's contention that consent to enter is not consent to search or remain or hide on the premises; that consent to remain is not consent to hide. Defendant further contends that Mrs. Springer consented freely only to the officers entering to see if the defendants were on the premises, that thereafter her consent to the officers remaining and hiding was not voluntarily given, if given at all."

Respondent, on the contrary, points out that, "When the officers arrived "Her reason for phoning the police department and inviting the officers into her home was because she was afraid. She had the 'fear of having that phone taken out and

having that phone disrupted.' Something was going on at her house which she didn't like and that something involved people using her telephone." . . . "Appellant's only contention is that Mrs. Springer did not voluntarily consent to the officers remaining and hiding in her home. He doesn't argue that there wasn't probable cause for an arrest without a warrant. It is undisputed that the officers observed appellant Cahan carrying on bookmaking activities, a felony, in their presence, and since the officers were properly in the house at the time the arrest was proper. (Pen. Code, § 836, subd. 1.)

"What was a lawful entry does not become trespassory merely because the officers heard damaging declarations and observed incriminating activity.

"A careful examination of the evidence introduced against appellant Cahan shows clearly that it was not obtained by unlawful search and seizure."

Although the judgment may be regarded by some, as rather severe, in the circumstances, nevertheless that issue is not open to discussion on appeal. Inasmuch as no prejudicial errors appear in the record the judgment is affirmed.

White, P. J., concurred.

FOURT, J.—I concur in the judgment. I cannot, however agree with the statement in the majority opinion that "the judgment may be regarded by some as rather severe, in the circumstances." The appellant was charged in three separate counts of violating the provisions of section 337a, Penal Code. A preliminary hearing was conducted and the appellant was remanded to the superior court for trial. In the superior court an information was filed charging the appellant with the three violations above mentioned and further, the information set forth that the appellant had, before the commission of the offenses in question, been convicted of the crime of robbery, a felony. The appellant pled not guilty as to each count and denied the prior conviction. A motion was made to quash the evidence, which was denied. On February 20, 1956, a trial by jury was waived and it was stipulated that Count I be severed from the other counts and that the matter be submitted on the transcript of the preliminary hearing. The appellant was found guilty as charged in Count I. An application for probation was made and the hearing on such application set for March 15, 1956. On August 23, 1956, the application for probation was heard and denied and judg-

ment was pronounced that appellant be imprisoned in the state prison for the term prescribed by law.

The defendant was charged with and convicted of bookmaking on a previous occasion, which ultimately resulted in *People* v. *Cahan* (1955), 44 Cal.2d 434 [282 P.2d 905], where the judgment was reversed. At the time of sentencing in the instant case the appellant's attorney referred to another "prior conviction for bookmaking" for which appellant was sentenced to six months in the county jail, and counsel twice stated to the court as though it were a recommendation in his client's behalf, "he has never been anything but a bookmaker." Thereafter, the defendant was charged with and convicted of two counts of robbery. (*People* v. *Cahan,* 141 Cal.App.2d 891 [297 P.2d 715].) The delay which occurred in the sentencing of the defendant in the instant case, from March 15, 1956, to August 23, 1956, was brought about because the appellant had apparently been shot in still another episode.

In my opinion, the trial court was entirely correct when he said, "It is true that he has only this one prior conviction, and I will take judicial notice of it, along bookmaking lines, particularly as evidenced by the decisions of our appellate courts." "This defendant, after all the warning that the law enforcement agencies could possibly give him, decided to continue experiments with it. If there was ever a case where a sentence to the penitentiary was merited, this is one."

The defendant has but little to complain of. The trial court, without any motion on the part of the People or the defendant, dismissed Counts II and III, and my reading of the transcripts and the records discloses no mention whatever of the prior conviction of robbery after the defendant denied such prior conviction, although it would have been a simple matter to secure and submit a certified copy of the judgment of conviction of the two counts of robbery, and thereby have proved the allegation.

A reading of the transcript discloses that, without doubt, the appellant was guilty as to Counts II and III of the information. The judge saw fit to dismiss the same, on his own motion, presumably "in furtherance of justice," although the minutes are devoid of any explanation as is required by section 1385, Penal Code, and furthermore, by the stipulation between the district attorney and counsel for appellant, only Count I was before the trial court.

No reasons whatsoever appear why the second and third counts were dismissed, and nothing appears to have been done by the district attorney as to the prior convictions for robbery.

The appellant may have been surprised at having been sent to the state prison, but he must have realized that to continue interminably with his violations of the law in one form or another, could ultimately end in no other way. Under the circumstances the judgment was not at all severe.