STATE of Missouri,
Plaintiff-Respondent,

v.

Gregory WILLIAMS,
Defendant-Appellant.

No. 39731.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Dec. 12, 1978.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 16, 1979.

Application to Transfer Denied
March 13, 1979.

Cynthia Holmes, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., Joseph Warzycki, Asst. Public Defender, St. Louis, for plaintiff-respondent.

CRIST, Judge.

Defendant Gregory Williams was found guilty by a jury of the offense of assault with intent to commit rape without malice aforethought, and was sentenced to imprisonment for a term of five years. Defendant appeals. We affirm.

Defendant complains: (1) the State made an illegal search of his room; (2) the court should have instructed on the lesser offense of common assault; and (3) he was prejudiced by a juror reading a newspaper during his trial.

Was it error for the court to admit evidence obtained, without a search warrant, in the search of defendant's room? The court could have found the following facts: Just after the attempted rape, defendant was seen carrying a briefcase which briefcase was entered into evidence. With information obtained from the victim and another witness, the police went directly to a house owned by Ardeane Walker, the defendant's aunt. The police informed her that defendant was implicated in an incident they were investigating and asked if

she knew him. She replied that she did, and that he was sleeping in her son's bedroom. When asked if they could enter and talk to the defendant she admitted them. Defendant was found in the bedroom. He was arrested and taken to the police station. The following morning Ms. Walker called the police department to report the finding of the briefcase in her son's room. The police returned to the Walker residence to pick up the briefcase and, with Ms. Walker's permission, searched the room. They obtained clothing from a closet which was later identified as the clothing worn at the time of the attempted rape and admitted into evidence. The police did not have a search warrant. The police came back later and Ms. Walker signed a consent to search and seize form.

■ The first question is whether or not the defendant had standing to object. The trial court properly found that the defendant did have standing to object for the reason that he had a right of privacy in and to the room. *In re J. R. M.*, 487 S.W.2d 502 (Mo. banc 1972).

■ The next question is whether Ms. Walker had authority to consent to the search of the room. The evidence showed that Ms. Walker had full authority over the room, her minor son and in the privacy of such room. Ms. Walker on occasion used the room, and the defendant had no property interest in the house or the land, paid no rent, and lived there only by Ms. Walker's consent. In the case of *United States v. Wright*, 564 F.2d 785 (8th Cir. 1977), the court held that the mother of the defendant therein, who had ownership and control of the entire premises could consent to the search of the premises, notwithstanding the fact that the defendant therein, his wife and child lived there and occasionally paid rent to the mother. *State v. Stuart*, 415 S.W.2d 766, 768 (Mo.1967) holds that "one who has equal authority over premises may authorize a search of them [citations omitted] and certainly such person may authorize an entry onto the premises contrary to the wishes of another who has far less authority." *See also State v. Howell*, 524 S.W.2d 11 (Mo. banc 1975).

■ Defendant further complains that Ms. Walker's consent was involuntarily given. In *State v. Berry*, 526 S.W.2d 92 (Mo. App.1975), the court indicated that voluntariness must be determined by the totality of the circumstances. Factors to be considered by the court are the number of officers, the degree of authority expressed by them, whether weapons were displayed, and whether any fraud on the part of the officers was exerted. The evidence in our case shows that Ms. Walker completely cooperated with the police. She initiated the official contact. No more than two officers were present at any time. The officers did not threaten her in any manner. Accordingly, we hold that she had authority to consent, and did voluntarily consent, to the search of the room.

■ Defendant next complains that "[t]he trial court erred in refusing to give Defendant's offered Instruction 'A' concerning the lesser included offense of common assault. . . ." The instruction given by the court essentially required a finding that the defendant assaulted his victim with intent to commit the offense of rape without malice aforethought. The instruction offered by the defendant essentially provided that he assaulted his victim by placing a pillow over her head and that if he did so intentionally the jury would find the defendant guilty of common assault. The failure to give this instruction was not error.

Defendant cites *State v. Matsinger*, 180 S.W. 856 (Mo.1915) for authority that his instruction was improperly refused. *Matsinger* also involved an assault with intent to rape. The defendant therein had raised a child's dress to place his private parts against hers. It was held that the court should also have given an instruction on common assault. However, in our case there was an express statement by the defendant that his purpose was to have sex.

From the only evidence offered concerning the intruder's actions against the victim, it is clear that the defendant intended

to rape her. The victim testified that when she awoke, she felt something between her legs and felt a man trying to have sex with her. The defendant's pants were down and he had an erection at the time. The defendant stated that he wanted to have sex with her. An instruction for a lesser included offense will be given only when there is evidence to support it. No evidence was offered to show that the defendant was trying to do anything but rape the victim. Accordingly, the offered instruction of defendant was correctly refused by the trial court. *State v. McCoy*, 530 S.W.2d 8 (Mo. App.1975); *State v. Sturgell*, 530 S.W.2d 737 (Mo.App.1975); and *State v. Lane*, 537 S.W.2d 569 (Mo.App.1976).

■ Was the defendant prejudiced by a juror reading a newspaper during the trial and the return of such newspaper to the juror prior to deliberations? On both days of the trial, a woman juror was observed reading a newspaper during the giving of testimony. Following admonitions by the court through the deputy sheriff against such conduct, the paper was taken away. The newspaper was returned to the juror prior to the jury's deliberations. Defendant complains that such conduct manifests a denial of his right to a fair and impartial trial by a jury of twelve.

The trial court has wide discretion to determine whether misconduct on the part of a juror requires a mistrial. The key consideration is the extent to which defendant's right to a fair trial has been prejudiced. In this case, the court was fully aware of the events complained of and was quick to take corrective action. It further provided an opportunity for additional evidence concerning the incidents at a post-trial hearing. Defendant offered no evidence to show that he was prejudiced by the juror's conduct. The evidence that was presented did not show demonstrable prejudice. We cannot hold that the court erred in overruling the motion for a mistrial. *State v. Edmondson*, 461 S.W.2d 713 (Mo. 1971); *State v. McQuerry*, 406 S.W.2d 624 (Mo.1966); *State v. Michaels*, 543 S.W.2d

245 (Mo.App.1976); *State v. Mullen*, 528 S.W.2d 517 (Mo.App.1975).

The judgment is affirmed.

DOWD, P. J., and ALDEN A. STOCKARD, Special Judge, concur.