Gerald M. SMITH, By and Through
Eugene SMITH, Jr., as his Next
Friend, Petitioner,

v.

William ARMONTROUT, Respondent.

No. 85–4647–CV–C–5.

United States District Court,
W.D. Missouri, C.D.

Jan. 9, 1986.

---

Richard Sindel, Clayton, Mo., for petitioner.

Kelly Mescher, Office of Atty. Gen., Jefferson City, Mo., for respondent.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Because the Missouri Supreme Court has decided to pass the buck to the Federal Courts, this Court has no choice but to step in and stay the execution of Gerald Smith. This case is before the Court by way of a next-friend habeas corpus petition filed on Gerald Smith's behalf by his brother, Eugene Smith, Jr. Gerald Smith has announced that he wants to forego all further appeals of his 1981 capital murder conviction and accompanying death sentence. Eugene Smith contends that his brother is not competent to make such a decision. For the reasons set forth below, Gerald Smith's execution will be stayed pending an up-to-date determination of his competency. If Gerald Smith is adjudged competent, his wish to have his death sentence carried out will be honored, but if he is adjudged incompetent, his brother Eugene will be permitted to process a federal habeas corpus petition on his behalf.

## I. Background

In 1981, Gerald Smith was convicted and sentenced to death for the 1980 bludgeoning of an ex-girlfriend. On direct appeal, Smith's conviction and death sentence were affirmed. *See State v. Smith,* 649 S.W.2d 417 (Mo.1983) (en banc). Smith next commenced a collateral attack on his conviction in the Circuit Court for the City of St. Louis pursuant to Mo.S.Ct. R. 27.26. Smith subsequently moved to dismiss that proceeding. On October 5, 1984, the state circuit court sustained that motion and dismissed the case without conducting a formal hearing on the issue of Smith's competency to waive his post-conviction remedies. On October 9, 1984, the Missouri Supreme Court held a special session and summoned Smith to appear before it. At that time, Smith advised the judges of that court of his wish to abandon further appeals. The Missouri Supreme Court granted Smith's wish and set his execution for November 9, 1984.

On November 5, 1984, Eugene Smith filed a next-friend petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2242 in the United States District Court for the Eastern District of Missouri. Judge Filippine of that Court immediately transferred the case to the Central Division of this Court as a more appropriate forum. On November 6, 1984, this Court found that a legitimate issue had been raised concerning

Gerald Smith's competency and, accordingly, entered an order staying Smith's execution pending resolution of the competency issue. *See Smith v. Armontrout*, 604 F.Supp. 840 (W.D.Mo.1984) (hereinafter *"Smith I"*). Before entering that order, the Court conducted a telephone conference with an attorney for Eugene Smith and an attorney from the Missouri Attorney General's office. At that time, both sides agreed that, in view of the conflicting psychological reports already of record, it was proper to perform a complete psychiatric evaluation of Gerald Smith. *See id.* at 843. By agreement of the parties, Smith was transferred to the Federal Medical Facility in Springfield, Misouri, for a comprehensive psychiatric examination and evaluation. A hearing on the issue of Smith's competency was set for March 5, 1985. Before the competency hearing took place, however, Smith changed his mind and announced that he wished to pursue his post-conviction remedies. Accordingly, the competency question became moot and Gerald Smith was substituted for his brother as the sole petitioner.

Nearly five months later, the State finally responded to Smith's petition for habeas corpus relief and raised the question of whether all of the claims in the petition had been previously presented to the state courts. Under the United States Supreme Court's ruling in *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), federal courts must dismiss a habeas corpus petition which contains one or more claims that had not been previously presented to the state courts. *See id.* at 522, 102 S.Ct. at 1205. Thus, when it appeared that state remedies had not been exhausted as to all of Smith's claim, this Court had no choice but to dismiss Smith's petition in its entirety and to turn the matter over to the state courts.

In the meantime, Gerald Smith once again announced that he wanted to abandon all further attacks on his conviction and death sentence. The Missouri Supreme Court promptly set January 6, 1986 as Gerald Smith's execution date. Eugene Smith quickly responded by filing a next-friend petition pursuant to Missouri Supreme Court Rules 27.26 and 52.02 on behalf of his brother in the Circuit Court for the City of St. Louis. At the same time, Eugene Smith filed a motion in the Missouri Supreme Court to stay Gerald Smith's execution pending a current determination of his competency. That motion was denied in one line and without any explanation. Eugene Smith returned to the Circuit Court for the City of St. Louis and obtained a ruling from Judge Jean C. Hamilton of that court that a next-friend 27.26 petition was a viable procedure under Missouri law. Eugene Smith then went back to the Missouri Supreme Court and renewed his motion for a stay of execution until the question of Gerald Smith's competency was resolved. The Missouri Supreme Court, on its own motion, postponed the execution date until January 15, 1986. On January 8, 1986, however, the Missouri Supreme Court issued an order which, in effect, stated that the next-friend 27.26 proceeding pending in state court in St. Louis was a legal nullity and that no further extensions of Gerald Smith's execution date would be granted. The Missouri Supreme Court explained that, in its opinion, the October, 1984 state court finding that Gerald Smith was competent foreclosed all further inquiry into that matter. Significantly, the Missouri Supreme Court did not hold a hearing or invite oral argument before making its ruling.

In view of the Missouri Supreme Court's statement that all available state procedures have been exhausted, the ball is back in this Court. On December 27, 1985, Eugene Smith filed a brand-new next-friend habeas corpus petition in this Court. Once again, the threshhold question before the Court is whether Gerald Smith is competent to waive his post-conviction remedies.

## II. The Competency Issue

The procedures to be used in state or federal court when a death row inmate announces his intention to abandon further appeals are well-established. The United

States Supreme Court has stated that critical issue is

> "whether [the inmate] has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises."

*Rees v. Peyton,* 384 U.S. 312, 314, 86 S.Ct. 1505, 1506, 16 L.Ed.2d 583 (1966) (per curiam). In order to make a reasoned decision on the competency issue, it is incumbent on the Court to conduct a hearing involving "the State and all other interested parties." *Id.* at 313, 86 S.Ct. at 1506. If the death row inmate is adjudged competent, the next-friend lacks standing to proceed and the death sentence may be carried out. If the inmate is adjudged incompetent, however, the next-friend is permitted to proceed on behalf of the inmate. In any event, the Court must stay the inmate's execution pending the competency determination in order to protect its jurisdiction over the case. *See Gilmore v. Utah,* 429 U.S. 1012, 1016, 97 S.Ct. 436, 439, 50 L.Ed.2d 632 (1976) (Burger, C.J. concurring).[1] Many courts have faithfully followed these procedures in handling cases such as the present one. *See, e.g., Hays v. Murphy,* 663 F.2d 1004, 1008–09 (10th Cir. 1981); *Groseclose ex rel. Harries v. Dutton,* 594 F.Supp. 949 (M.D.Tenn.1984); *Rumbaugh ex rel. Rumbaugh v. Estelle,* 558 F.Supp. 651 (N.D.Tex.1983), *remanded with instructions,* 730 F.2d 291 (5th Cir. 1984).

In view of these well-settled precedents, this Court has no choice but to schedule a hearing on the issue of Gerald Smith's competency. That hearing will be conducted on February 18, 1986, at the United States Courthouse in Jefferson City, Missouri. In the meantime, the parties will be given an opportunity to update their psychological evaluations of Gerald Smith.[2] By agreement of the parties, Smith will be returned to the Federal Medical Center in Springfield, Missouri for re-evaluation. The parties should begin preparing for the February 18 hearing immediately.

## III. The Missouri Supreme Court's Approach

 The only conceivable reason why this Court should not conduct a competency hearing next month would be if it agreed with the Missouri Supreme Court that the 1984 state court determination of competency is somehow conclusive in the present day. With all due respect to the Missouri Supreme Court, however, this Court believes that the 1984 state court determination cannot be deemed conclusive for three fundamental reasons. First, the October, 1984 state court finding that Smith was competent is not sufficiently recent to be binding at the present time. That finding is now sixteen months old. At the very least, the state courts should have inquired into whether any circumstances since October, 1984 have affected Smith's current psychological disposition. Second, assuming *arguendo* that the 1984 state court finding could be binding in the present day, it is evident that such a finding would be deficient because the underlying procedures used in state court were wholly inadequate. In 1984, the circuit court did not afford both sides an opportunity to develop evidence concerning Gerald Smith's competency, nor did it give the parties an opportunity to cross-examine any of the psychologists who had examined Smith. Such opportunities are not only necessary to comply with rudimentary standards of due process, but such input also is necessary for reasoned judicial decisionmaking. Third, the October, 1984 "finding" that Smith is competent cannot be deemed binding be-

---

**1.** Such a stay is in no sense a finding in favor of the inmate; the stay is merely necessary to protect the Court's jurisdiction over the case, for if the inmate was executed while the competency question was pending, the case would become moot even if it later appeared that the inmate clearly was incompetent and that he clearly deserved a new trial.

**2.** All psychological data and other documents of record compiled during *Smith I* are hereby incorporated into the record of this proceeding.

cause the Missouri Attorney General's office subsequently acknowledged before this Court in November, 1984 that the competency question remains an open one. *See Smith I,* 604 F.Supp. at 843. For these three reasons, then, this Court will decline to follow the approach of the Missouri Supreme Court.

Indeed, after surveying the entire situation, it becomes painfully obvious that the Missouri Supreme Court's refusal to stay Gerald Smith's execution pending a competency determination by Judge Hamilton had no basis in fact nor in law, but was merely an expedient way of washing its hands of the matter and passing the buck to the Federal courts. The Missouri Supreme Court surely must have known that the competency determination must be current and that a sixteen-month-old finding of competency cannot be deemed conclusive on that issue. It is the opinion of this Court that Judge Hamilton acted properly last month when she allowed the filing of petitioner's next-friend 27.26 motion in state court. In sharp contrast, however, the Missouri Supreme Court abdicated its position as a court of law when it refused to stay Smith's execution and permit Judge Hamilton to proceed.[3] This is not the first time that the Missouri Supreme Court has passed the buck to the Federal courts by refusing to perform its legal obligation to stay an execution. On at least three prior occasions when the law required a stay to permit post-conviction appeals to be heard in an orderly manner, the Missouri Supreme Court declined to act, knowing that the Federal Courts would take the proper action. *See McDonald v. Missouri,* 464 U.S. 1306, 104 S.Ct. 567, 78 L.Ed.2d 538 (Blackmun, Circuit Justice, 1984); *Williams v. Missouri,* 463 U.S. 1301, 103 S.Ct. 3521, 77 L.Ed.2d 1282 (Blackmun, Circuit Justice, 1983); *Blair v. Armontrout,* 604 F.Supp. 723 (W.D.Mo.1985).

In the final analysis, the fact that this Court will have to "take the heat" from the public because of its order staying Gerald Smith's execution is, as it should be, inconsequential. As Harry S. Truman once said, "If you can't stand the heat, stay out of the kitchen." Come to think of it, it was Mr. Truman who also said, "The buck stops here." This Court will elect to follow the example of Mr. Truman.

Accordingly, it is hereby

ORDERED that the execution of Gerald Smith is stayed pending a determination by the Court of whether he is competent to abandon further litigation. It is further

ORDERED that a hearing on the issue of Gerald Smith's competency is set to commence at 9:00 A.M. on February 18, 1986, at the United States Courthouse in Jefferson City, Missouri. It is further

ORDERED that the parties shall file a proposed scheduling order no later than January 17, 1986.

---

**3.** This Court is aware that many members of the public are frustrated with what seems to be inordinate delay in the processing of appeals by death row inmates. Indeed, many people believe that there should be no appeals whatsoever following the jury's imposition of the death sentence. The law, on the other hand, provides that certain procedures must be followed before a death sentence may be carried out. Although it may not win a popularity contest in any given case, this scheme was adopted to ensure that every individual would be accorded due process of law.